LARA HRUSKA, WSBA No. 46531
Cedar Law PLLC
113 Cherry Street, PMB 96563
SEATTLE, WA 98104-2205
T: (206) 607-8277
F: (206) 237-9101
E: lara@cedarlawpllc.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YADIRA CONTRERAS, ERICA KRONECK, KYLE OLSON, AND HENDRY ("CODY") RODMAN III, <br><br> Plaintiffs, <br><br> vs. <br><br> HERITAGE UNIVERSITY, <br><br> Defendant. | Case No.:  22-cv-03034 <br><br> **COMPLAINT FOR DAMAGES** |

Yadira Contreras, Erica Kroneck, Kyle Olson, and Hendry ("Cody") Rodman III (collectively "Plaintiffs") were all enrolled in the Physician's Assistant ("PA") program at Heritage University ("Heritage"). The PA Program at Heritage was

COMPLAINT FOR DAMAGES - 1

accredited through the Accreditation Review Commission on Education for the Physician Assistant, Inc. ("ARC-PA") from March 2014 through May 2021. In November 2020, the accreditation of the PA program at Heritage was voluntarily withdrawn following a lengthy history of noncompliance with ARC-PA's standards that had not been properly disclosed to the students despite affirmative questions on the subject. The PA program was allowed to maintain its probationary accreditation through May 2021.

The Plaintiffs enrolled in the PA program at Heritage because it was an accredited PA program - albeit on probation - and based on the assurances by authorized agents of the school that the probationary process would not impact their enrollment "in any way." They were enrolled for a two-year (2020-2022) cohort with anticipated graduation in May 2022. Until November 4, 2021, Plaintiffs were repeatedly assured by, most notably, the Director of the Program and the Admissions Coordinator that the program would maintain its accreditation through their graduation. The Plaintiffs made their enrollment decisions in reliance on those assurances.

The Heritage administration ultimately surrendered its accreditation to the detriment of its own students. As a result of that decision, the Heritage PA program shuttered after the 2020-2021 school year. Students in the program were notified toward the end of their first semester that they would not be able to complete the

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

program as promised but would be relocated to accredited programs around the country. The quality of the first year of the program declined precipitously, and the students were denied the benefit of even one year of adequate instruction, which the Plaintiffs had already paid for.

The 5th Edition of the ARC-PA Standards (the "Standards"), which governed the PA Program at Heritage University provides that the institution is responsible for "teaching out currently matriculated students in accordance with the institution's regional accreditor or federal law in the event of program closure and/or loss of accreditation." The Standards further define "teaching out" as "allowing students already in the program to complete their education or assisting them in enrolling in an ARC-PA accredited program in which they can continue their education." Given that Heritage was not able to provide instruction to the Plaintiffs' cohort in order for them to complete their degree, it was required to assist them in enrolling in an ARC-PA accredited program.

Graduation from an accredited program is a requirement to be employed as a PA in most states in the U.S. As a result, the Plaintiffs were forced to attempt transfer to new programs. Heritage repeatedly promised the Plaintiffs that it would assist them in transferring to accredited programs. For those who found programs willing to accept them, this required significant upset and relocation. For those left without new programs, they were forced to reapply to first-year programs which set

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA 98104-2205
(206) 607-8277;
Fax (206) 237-9101

them back one to two years in their graduation timelines, because they detrimentally relied on the promises of Heritage first to graduate them and then to relocate them. The Plaintiffs have incurred, and continue to incur, out-of-pocket expenses to complete their educations in accredited PA schools.

To date, two of the Plaintiffs – Ms. Kroneck and Ms. Contreras – were altogether unplaced by Heritage and had to restart their education in new programs which has set them back two years and one year, respectively, in their graduations dates; while the other two Plaintiffs – Mr. Rodman and Mr. Olson - resettled themselves without the assistance of Heritage, so they will graduate in 2022 but with graduation dates delayed by several months, costs incurred in their resettlement, and postponed careers.

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Yadira Contreras is a resident of West Palm Beach, FL.

2.    Plaintiff Erica Kroneck is a resident of Macomb, MI.

3.    Plaintiff Kyle Olson is a resident of Mesa, AZ.

4.    Plaintiff Hendry "Cody" Rodman III is a resident of Lincolnville, ME.

5.    Defendant Heritage University is a private not-for-profit university doing business in the City of Toppenish, Yakima County in the State of Washington.

COMPLAINT FOR DAMAGES - 4

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

6. The amount in controversy exceeds $75,000, and the parties are completely diverse, as such, this court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332, and the venue is proper.

## II. FACTS

### A. DESCRIPTION OF HERITAGE AND THE PHYSICIAN'S ASSISTANT PROGRAM

10. Heritage is a Washington not-for-profit corporation operating a private university in the City of Toppenish, Yakima County, Washington.

11. Heritage offers a number of undergraduate and graduate degree programs at its Toppenish, Tri Cities, and Moses Lake campuses. Of its graduate degree programs, Heritage offered a Master's of Science in Physician Assistant (MSPA) at its Toppenish campus through its Physician Assistant Education Program ("PA Program") until its accreditation was voluntarily withdrawn in September 2020.

12. The PA Program was accredited through the ARC-PA

13. Those achieving the MSPA are permitted to take national certification examination administered by the National Commission of the Physician Assistant (NCCPA).

14. Once an applicant has passed this examination, they may practice as a PA.

COMPLAINT FOR DAMAGES - 5

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

15.    In general, a PA, once certified, conducts the following medical services: obtaining medical histories; examining, diagnosing, and treating patients; ordering and interpreting diagnostic tests; and recommending and implementing treatment plans for a wide range of human illnesses and injuries. They may also perform minor surgery, assist in major surgery, instruct and counsel patients, and order, carry out, and prescribe medications.

16.    According to American Academy of PAs (AAPA) the median compensation for a first-year full-time PA is $111,000.

17.    For PAs serving in the military, this can include significant additional compensation for an Army PA/reservist position.

18.    Most employers in the PA field require applicants to have graduated from an accredited MSPA program.

19.    When Heritage's accreditation was voluntarily withdrawn, the students in the Heritage PA program had to be placed in alternate accredited PA programs around the country in order to complete their degrees at an accredited university.

**B.    YADIRA CONTRERAS**

20.    Ms. Contreras was invited to interview at Heritage and two other PA programs. Heritage was her first interview in September 2019. During her interview, Ms. Contreras received oral assurances from the Heritage staff

COMPLAINT FOR DAMAGES - 6

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

interviewing her that the Heritage PA Program's probationary status would not affect her ability to graduate from an accredited program. Relying on those assurances, after her acceptance at Heritage, Ms. Contreras cancelled her other interviews and enrolled in the program at Heritage.

21.     In order to attend Heritage, Ms. Contreras moved from West Palm Beach, Florida to Washington and began the program in May 2020, during the summer semester.

22.     Ms. Contreras began experiencing panic attacks, insomnia, and chest pains at the end of the summer semester in 2020. On August 19, 2020, Ms. Contreras received a letter from her primary care physician confirming a diagnosis of acute adjudgment disorder with anxiety and a prescription for Wellbutrin XL, an antidepressant.

23.     Also on August 19, 2020, Ms. Contreras submitted a formal request for accommodations to Heritage to better accommodate her anxiety in the school setting.

24.     Ms. Contreras's anxiety was further compounded when her grades on a test was made available to other students in the PA program. As a result of the grades leak, Ms. Contreras experienced embarrassment and shame that exacerbated her anxiety.

COMPLAINT FOR DAMAGES - 7

Cedar Law PLLC
113 Cedar Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

25.     In September of 2020, after consultation with her providers and the school, Ms. Contreras decided to decelerate from the program, take a year off to focus on her mental health, and join the next year's cohort.

26.     The fifth edition of the standards published by the ARC-PA, which applied to the PA Program at Heritage University, defines "deceleration" as "the loss of a student from the entering cohort, who remains matriculated in the physician assistant program."

27.     At the time she decelerated, several Heritage professors and administrators, including Dr. Bill Hatch, Dr. Dale, and Dr. Stephas, promised Ms. Contreras that she could join the "next year's cohort" with only a one-year delay in her career trajectory.

28.     However, because Heritage voluntarily discontinued its PA program, there was no cohort for Ms. Contreras to join, and she is damaged as a result.

29.     Furthermore, after the PA program was discontinued and despite its express and repeated promises to assist her, Heritage made no effort to transfer Ms. Contreras to another accredited program. As a result, she had to wait an additional year to apply herself to first-year programs on the next admission cycle. While she has mitigated her own damages, her career trajectory was derailed by one full year because of the Defendant.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

30.     Heritage knew that Ms. Contreras had decelerated and was on a disability-related pause from the PA program, but despite this notice and its past promises to support her, Ms. Contreras received no assistance. Ms. Contreras relied on repeated promises that Dr. Dale was seeking out programs for her transfer, but she was not transferred, and was thus treated differently from other students in the program because of her disability, in violation of Federal and State anti-discrimination laws.

31.     As Ms. Contreras began to apply to other PA schools during the next application cycle, she did so without the letter of recommendation that Heritage promised to provide but never produced. But even without Heritage's support, Ms. Contreras applied to 10 programs and was accepted as a first-year student at the PA program at South University in West Palm Beach, FL.

32.     Ms. Contreras is expected to graduate in 2024.

## C.     ERICA KRONECK

33.     Ms. Kroneck moved to Yakima, Washington from Michigan to attend the PA program at Heritage.

34.     During the interview process, Ms. Kroneck asked about the PA program's probationary status and was assured by Heritage staff including the Director of the program and the Admissions Coordinator that if anything happened, she would be taught out and able to graduate from an accredited school.

COMPLAINT FOR DAMAGES - 9

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

35.     Ms. Kroneck relied on the assurances she received when she chose to enroll in Heritage University's PA program.

36.     After Heritage withdrew is accreditation, Erica Kroneck was told again and again by the Director of the program not to attempt to apply herself to programs in order to transfer to an accredited institution and to wait for Heritage to place her. She was then inexplicably not placed in any alternate PA program.

37.     As a result of not being placed, Ms. Kroneck first moved to Nashville, TN, then to Macomb, MI, and returned to her job as a cardiovascular invasive specialist.

38.     While Heritage worked with other students in the PA program to place them in accredited programs, Ms. Kroneck remained unplaced.

39.     Because PA programs do not typically accept transfer credits from other institutions, the advocacy of Heritage officials would have been crucial to get Ms. Kroneck into a placement where she could have started her second year.

40.     Given that Heritage failed in placing Ms. Kroneck, she is obligated to start over from day-one in her new program.

41.     Ms. Kroneck maintained a 3.7 GPA at Heritage.

42.     Ms. Kroneck was not disciplined or reprimanded for any academic or behavioral concern at Heritage University.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

43.     In addition to the costs of tuition and loans she incurred to pay for the year of education at Heritage from which she was unable to transfer credits, Ms. Kroneck has incurred out-of-pocket expenses in her attempts to be admitted in other schools, including airfare, storage, application fees, transcript fees, and additional courses.

44.     Ms. Kroneck has also experienced significant emotional distress as a result of Heritage's actions and inaction.

45.     Ms. Kroneck has been seeing a mental health therapist to provide support during this stressful time. Notably, Ms. Kroneck had no mental health history and had not been prescribed psychiatric medication prior to this dispute.

46.     Even without additional support from Heritage, Ms. Kroneck applied to 33 PA programs, each of which required application fees.

47.     Ms. Kroneck was recently accepted to the PA program at A.T. Still University in Mesa, Arizona. Her new cohort starts in June 2022 and has an anticipated graduation in 2024.

48.     As a result of being accepted to A.T. Still University, Ms. Kroneck will incur additional relocation and moving costs.

49.     Ms. Kroneck also paid out of pocket for additional testing fees, supplemental courses, and the costs for distributing test results to potential PA programs.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

50.    In addition to the out-of-pocket costs she incurred, Ms. Kroneck's graduation date and thus career was derailed by two years as a result of Heritage's actions and inaction.

## D.    KYLE OLSON

43.    During his application process, Mr. Olson emailed Heritage and asked specific questions regarding Heritage's probationary accreditation status and what would happen if the PA program did not maintain its accreditation.

44.    In response to his email, Mr. Olson was assured by the Admissions Coordinator that the Heritage PA program was only placed on probationary accreditation due to issues with their data collection process and that the probationary status would not have an impact on Mr. Olson or his cohort "in any way."

45.    Mr. Olson relied on the Heritage's assurance when he and his wife moved, along with their two children, to Yakima, WA in order to attend Heritage University.

46.    Mr. Olson and his wife had a third child during Kyle's first year of PA school at Heritage.

47.    When Heritage surrendered its accreditation and told students that it would place them and not to reach out to placements on their own, Mr. Olson

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

ignored Heritage's instructions not to self-help and began reaching out to accredited PA programs to secure a placement.

48.     Mr. Olson was ultimately accepted to A.T. Still University in Mesa, AZ.

49.     Mr. Olson has since relocated his family again to attend school at A.T. Still University in Mesa, AZ.

50.     Mr. Olson will graduate three and half months later than his graduation would have been at Heritage University.

51.     As a result of the delay in graduation, Mr. Olson will lose three and a half months of wages as a practicing PA.

52.     Mr. Olson has also incurred significant out-of-pocket expenses due to the actions and inactions of the Defendant.

**E.     HENDRY "CODY" RODMAN, III**

46.     Mr. Rodman is a military veteran and used G.I. Bill benefits to pay for the year of education he received at Heritage.

47.     Mr. Rodman was told early on that he would likely be accepted to Heritage and, as a result, did not seek admission at other PA schools.

48.     In his interview with Heritage University, Mr. Rodman received express assurances from the faculty and administration that the probationary status

COMPLAINT FOR DAMAGES - 13

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

of the program's accreditation would not affect his ability to graduate from an accredited program.

49.    Like Mr. Olson, once Heritage's accreditation had been withdrawn, Mr. Rodman ignored Heritage's instructions not to self-help and secured his own placement at Bryant University in Smithfield, RI without assistance from Heritage.

50.    Mr. Rodman will have to pay out of pocket for travel to and from Rhode Island from his home in Maine for twelve clinical placements, which each require a one-month stay. This would not have been the case but for his late relocation to a different program.

51.    Mr. Rodman's graduation date has been postponed by several months from May to September 2022. As a result of the delay in graduation, Mr. Rodman will lose several months of both civilian and military wages as a practicing PA.

### III.    SUMMARY OF CLAIMS

52.    The claims set forth herein are brought pursuant to the Washington Consumer Protection Act, Washington State Law Against Discrimination (WLAD), RCW 49.60.010, et seq. and various contract and tort theories under state and federal law. These laws and principals combined with Heritage's negligence, deceptive acts, practices, and breaches of contractual duties make it unjust for the Defendant to profit from its practices.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

53.     Defendant is a school that receives federal public assistance through the many tuition funds and grants that flow through student loans and the G.I. Bill into the organization.

54.     Plaintiff Yadira Contreras has protected and recognized disabilities that resulted in her unfair and discriminatory treatment by the program that refused to place her at a transfer school or provide the letter of recommendation as promised. As such, Defendant violated Plaintiff Yadira Contreras's rights to be free from disability-based discrimination and harassment under the WLAD, ADA, and 504. Defendant, acting with deliberate indifference through one or more of its officials, administrators, agents, and/or employees discriminated against Yadira Contreras on the basis of her disability.

## IV.    CAUSE OF ACTION – Washington State Consumer Protection Act

59.     The foregoing allegations are incorporated by reference herein.

60.     The conduct described above and throughout this Complaint took place in the State of Washington. Specifically, the Defendant affirmatively misrepresented its probationary status as related only to data collection and not have any impact on students once they had matriculated, which resulted in all four Plaintiffs enrolling in the program. Then, once it learned that it would not be able to graduate students from an accredited school once it voluntarily surrendered its accreditation status, the Defendant continued to deceive students by telling them

COMPLAINT FOR DAMAGES - 15

not to take steps to find transfer schools resulting in Ms. Kroneck and Ms. Contreras being without any school once the program shuttered. These affirmative actions constitute unfair methods of competition or unfair or deceptive acts or practices in violation of §19.86.020 of the Revised Code of Washington ("RCW") and the Washington Consumer Protection Act ("CPA"), RCW 19.86.020, et seq. See also RCW 49.60.030(3), defining any violation of the WLAD in this circumstance as an "unfair or deceptive act in trade or commerce" and, therefore, a violation of the CPA.

61.    The Washington CPA also applies to the claims of the plaintiffs because the conduct which constitutes violations of the CPA by the Defendant occurred within Washington State.

62.    Defendant's unfair or deceptive acts or practices repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the public including but not limited to other students in the cohort who were similarly misled but chose not to pursue legal action.

63.    Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices. Such unfair methods of competition and/or unfair or deceptive acts or practices include, but are not limited to, the misrepresentation and concealment of material facts about the nature of the PA

COMPLAINT FOR DAMAGES - 16

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

program and its PA program's accreditation status and misrepresentation about the status of transferring students to mitigate the damages to their education.

64.    Defendant's misrepresentations, concealment, omissions, deceptions, and conduct were likely to deceive and likely to cause misunderstanding and/or in fact caused Plaintiffs to enroll in a program that they believed would remain accredited through their graduation only to have that accreditation voluntarily withdrawn by Heritage in November 2020. Plaintiffs furthermore were caused by Defendant's misrepresentations to fail to apply to alternative programs for transfer which resulted in a one year delay for Ms. Contreras and a two year delay for Ms. Kroneck. Mr. Olson and Mr. Rodman disregarded the Defendant's instructions because they no longer trusted the Defendant to watch out for the best interests of its students.

65.    Plaintiffs relied on Defendant's misrepresentations, warranties, deceptions, and/or omissions.

66.    Plaintiffs have been damaged as a proximate result of Defendant's violations of the CPA and have suffered actual, ascertainable losses by foregoing income in order to pursue their MSPA degrees, and after the accreditation was withdrawn, the Plaintiffs incurred enrollment fees in other schools, moving expenses, delays in graduation, and lost earnings from the delays imposed on their working careers.

COMPLAINT FOR DAMAGES - 17

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

67.     Defendant's unfair or deceptive acts or practices have injured Plaintiffs and other persons, and have the capacity to injure other persons, and are injurious to the public interest. The consumer protection violations of the PA Program, while shuttered, impacted all the students in Plaintiffs' cohort, and its parent University still exists and serves thousands of students and thus impacts the public interest.

68.     As a direct and proximate result of Defendant's violations of the CPA as set forth above, Plaintiffs have suffered an ascertainable loss and are therefore entitled to relief, including treble damages, costs, and attorney's fees.

## V.     CAUSE OF ACTION – Breach of Contract

69.     The foregoing allegations are incorporated by reference herein.

70.     The relationship between students and universities is primarily contractual in nature, with the "specific terms to be found in the university bulletin and other publications." *Marquez v. University of Washington,* 32 Wash. App. 302, 305 (1982).

71.     By admitting the Plaintiffs and accepting their tuition, Heritage created a contract between itself and the Plaintiffs. Heritage breached its contract with the Plaintiffs by voluntarily withdrawing its accreditation in November 2020 and dissolving the program before the Plaintiffs were able to complete their program. Moreover, the quality of the instruction declined to such an extent that Heritage was no longer offering the promised program to its students.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

72.     As a result of Heritage's breach of contract, the Plaintiffs have been damaged in an amount to be proven at trial.

## VI.    CAUSE OF ACTION – Breach of the Covenant of Good Faith and Fair Dealing

73.     The foregoing allegations are incorporated by reference herein.

74.     Under Washington common law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. Dept. of Social and Health Services*, 180 Wash.2d 102, 112 (2014) (internal citations and quotation marks omitted).

75.     Heritage's various standards, policies, and procedures constitute representations and promises that Heritage expected, or should have reasonably expected, would induce action or forbearance by the plaintiffs.

76.     Heritage expected or should have expected the Plaintiffs to accept Heritage's offer of admission, to incur tuition and fee expenses, and to choose not to attend other universities based on its express and implied promises, including the implied promise that Heritage's PA Program would remain an accredited program.

77.     The Plaintiffs relied to their detriment on Heritage's express and implied promises and representations and thus did not obtain the full benefit of performance.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

78.    The quality of Heritage's educational offering also reduced significantly once the faculty knew that the program was losing its accreditation, which is violative of the implied covenant of good faith and fair dealing and denied Plaintiffs the full benefit of performance of the one year they did receive.

79.    As a result of the Defendant's actions, Plaintiffs have suffered loss, damage, and detriment including incidental and consequential damages.

## VII.   CAUSE OF ACTION – Fraudulent Misrepresentation

80.    The foregoing allegations are incorporated by reference herein.

81.    In connection with recruiting and marketing the PA program at Heritage, Defendant supplied false, misleading, inaccurate, and incomplete information regarding the program's accreditation and the program's accreditation standing.

82.    Heritage had a duty to disclose to Plaintiffs any decision not to seek to restore its accreditation standing.

83.    Heritage supplied false, misleading, inaccurate and incomplete information about the PA program.

84.    Plaintiffs reasonably and justifiably relied on Heritage's misrepresentations and non-disclosures to their detriment.

85.    Heritage's statements and representations of the probationary status of the PA program and the impact that probation could have on newly matriculated

COMPLAINT FOR DAMAGES - 20

students were inaccurate, and Heritage knew or should have known that Plaintiffs would reasonably and justifiably rely on Heritage's false misrepresentations to their detriment.

86.     Voluntarily withdrawing its accreditation was a clear breach of the PA program's warranties to students.

87.     Affirmatively promising to relocate the Plaintiffs and then failing to deliver on its obligation to find transfer institutions for Ms. Kroneck and Ms. Contreras was yet another fraudulent misrepresentation that these students justifiably relied on.

88.     As a direct and proximate result of these misrepresentations and concealments, Plaintiffs have suffered actual damages, in an amount to be proven at trial, by enrolling in Heritage University's PA program, incurring student loan debt to pay for the cost of the program, and incurring enrollment fees in other schools, moving expenses, delays in graduation, and lost earnings from the delays imposed on their working careers.

**VIII.  CAUSE OF ACTION – Negligent Misrepresentation**

89.     The foregoing allegations are incorporated by reference herein.

90.     Heritage had a duty to exercise reasonable care in communicating accurate and complete information about the PA program at Heritage and regarding the program's accreditation and the program's accreditation standing.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

91.     Heritage's statements and representations of the PA program were inaccurate because the program was not in good standing with the accrediting body ARC-PA and the program voluntarily withdrew its accreditation in November 2020. Heritage misrepresented the protections of the Teach-Out clause in the ARC-PA to the Plaintiffs which resulted in their reasonable reliance and subsequent damages.

92.     Heritage failed to exercise reasonable care in communicating accurate and complete information about its accreditation standing for its students to make informed decisions in order to mitigate the impact of Heritage's loss of accreditation.

93.     Heritage concealed from Plaintiffs that the PA program was not in good standing with ARC-PA and that the program's accreditation would be withdrawn. Heritage supplied false, misleading, inaccurate, and incomplete information about the PA program and the program's accreditation.

94.     Heritage's statements were untrue and inaccurate, and Heritage knew or should have known that Plaintiffs would reasonably and justifiably rely on Heritage's false misrepresentations and omissions to their detriment.

95.     As a direct and proximate result of the misrepresentations and concealments, all Plaintiffs have suffered actual damages in an amount to be proven at trial by enrolling the PA program at Heritage, incurring student loan debt to pay

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

for the cost of the program, using G.I. Bill benefits, incurring enrollment fees in other schools, moving expenses, delays in graduation, and lost earnings from the delays imposed on their working careers.

## IX.    CAUSE OF ACTION – Unjust Enrichment

96.    The foregoing allegations are incorporated by reference herein.

97.    To plead an unjust enrichment claim, a benefit must be conferred by the plaintiffs to the defendant, the benefit must have been received at the plaintiffs' expense, and it must be unjust for the defendant to keep the benefit under the circumstance. *Young v. Young*, 164 Wn.2d 477, 484 (2008); *see also Bailie Commc'ns, Ltd. v. Trend Bus.* Sys., *Inc.,*61 Wn. App. 151, 160 (1991) ("Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another.")

98.    Heritage provided educational services to the students during the 2020-2021 school year that did not meet the quality standards necessary for the Plaintiffs to have received any benefit and it is unjust that Heritage should retain the funds paid for those services. Specifically, Ms. Kroneck, Mr. Olson, and Mr. Rodman were subjected to subpar instruction that declined in quality once the faculty and staff knew the accreditation had been withdrawn.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

99.    Moreover, Ms. Kroneck and Ms. Contreras received absolutely no benefit from these credits as they were forced to start all over as first-year students at the schools they found and secured with no help from Heritage.

100.    All plaintiffs have conveyed multiple benefits – most specifically, their tuition money and Mr. Rodman's GI benefits – to the Defendant at their expense. It is unjust for Heritage University to keep the benefits of those services without conveying anything to Plaintiffs.

## X.    CAUSE OF ACTION – Promissory Estoppel

101.    The foregoing allegations are incorporated by reference herein.

102.    The claimants' detrimental reliance on promises made by Heritage University give rise to a claim in equity under promissory estoppel.

103.    Promissory estoppel has long been recognized in Washington and may serve as the basis for an action for damages. *Klinke v. Famous Recipe Fried Chicken,* 94 Wn. 2d 255 (1980).

104.    There are five prerequisites for a recovery in promissory estoppel: (1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying on the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *Corbit v. J.I. Case Co.*, 70 Wn. 2d 522 (1967).

COMPLAINT FOR DAMAGES - 24

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

105.   Washington case law further describes that promissory estoppel:

… is based upon the same equitable principles as is estoppel by silence. In the one case a promise is made with the intention that it be acted upon by the promisee; in the other, a person has been silent on some occasion when he should have spoken. But in either case the party who is estopped has in effect stood by and, in violation of his duty in equity and good conscience to warn another of the real facts, permitted the latter to take some action detrimental to his own interest.

In order for estoppel to arise in such case, it is not necessary that the one estopped receive some benefit or consideration from the particular transaction; neither is it necessary that he be guilty of some actual overt act of fraud.

*Cent. Heat, Inc. v. Daily Olympian, Inc.*, 74 Wash. 2d 126 (1968), quoting *Lacy v. Wozencraft*, 188 Okl. 19 (1940).

106.   Heritage Unversity made a string of false promises to each of the claimants. First Heritage promised that the PA program's probationary status "will not have an impact on our students in any way."

107.   After that promise proved to be false, Heritage University promised that "The University will teach out the currently enrolled students."

108.   And after that promise proved to be false, the University promised that it would "assist in transferring all Class 2022 students to another ARC-PA accredited program."

109.   Heritage failed to follow through on the first and second promise to all four Plaintiffs and the last promise for either Ms. Kroneck or Ms. Contreras.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

110.  Time and time again the plaintiffs relied on Heritage's promises and time and time again they did so to their detriment.

## XI. CAUSE OF ACTION – Negligence

111.  The foregoing allegations are incorporated by reference herein.

112.  Heritage University owed a duty of reasonable care to the Plaintiffs both as applicants to the university and once they were matriculated as students in the PA program.

113.  Heritage University had a duty to abide by the standards set forth by the ARC-PA, its accrediting body. Under the teach-out clause in the Standards, Heritage University had a duty to either "allow[] students already in the program to complete their education or assist[] them in enrolling in an ARC-PA accredited program in which they can continue their education."

114.  With regard to the Plaintiffs, Heritage failed to do either. On May 31, 2021 the PA Program at Heritage officially lost its probationary accreditation pursuant to its voluntary withdrawal in November 2020, and Heritage reported that it was that it was thus unable to teach out the Plaintiff's cohort for their second year.

115.  Heritage University also failed to assist the Plaintiffs in transferring to accredited programs. Both Mr. Olson and Mr. Rodman self-helped, despite the requests from Dr. Dale that they should not contact programs themselves and were able to get themselves placed in new accredited programs. By contrast, Ms.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

Contreras and Ms. Kroneck were altogether unassisted by Heritage, and were not transferred to new, accredited programs. They have had to reapply and start their education again in new programs as first year students.

116.    By failing to assist the Plaintiffs in transferring to new accredited PA programs, Heritage University breached its duty of care in its dealings with the Plaintiffs, and the Plaintiffs were damaged as a result. x

### XII.    CAUSE OF ACTION – Negligent Hiring and Supervision

117.    The foregoing allegations are incorporated by reference herein.

118.    The Defendant failed to adequately train, monitor, or supervise employees of Heritage University.

119.    Heritage University was deliberately indifferent to the duty it owed to the Plaintiffs when it failed to promulgate a policy, procedure, or practice to properly train and to prevent Defendant's employees from disseminating inaccurate information regarding the PA program at Heritage University, the accreditation status of the PA program at Heritage University, Heritage University's teach-out policy, the role the ARC-PA would have in determining whether Heritage University would remain accredited through the Plaintiffs' graduation from the program, the ability of Yadira Contreras to join Cohort 7 of the PA Program at Heritage University, the ability of the Defendant to assist the Plaintiffs in

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

transferring to other accredited PA programs, and other misinformation the Plaintiffs relied upon to their detriment.

120.    As a result of the Defendant's deliberate indifference, the Defendant failed to properly act to ensure that Heritage University's employees provided the Plaintiffs with accurate information regarding the PA program at Heritage University, the accreditation status of the PA program at Heritage University, Heritage University's teach-out policy, the role the ARC-PA would have in determining whether Heritage University would remain accredited through the Plaintiffs' graduation from the program, the ability of Yadira Contreras to join Cohort 7 of the PA Program at Heritage University, the ability of the Defendant to assist the Plaintiffs in transferring to other accredited PA programs, and other misinformation the Plaintiffs relied upon to their detriment.

121.    As a result of the Defendant's indifference and failure to adequately train and/or supervise its agents and employees, the Plaintiffs have been harmed in an amount to be determined at trial.

### XIII.  CAUSE OF ACTION – Washington Law Against Discrimination – Chapter 49.60 RCW

122.    The foregoing allegations are incorporated by reference herein.

123.    Plaintiff Yadira Contreras is an individual with a disability as defined by the Washington Law Against Discrimination ("WLAD").

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

124.    Heritage is an educational institution and therefore is a place of public accommodation as defined by the WLAD.

125.    Ms. Contreras placed Defendant on notice of her need for reasonable accommodation.

126.    Heritage discriminated against Ms. Contreras on the basis of her disability by treating her differently than her nondisabled colleagues despite promises that she would be treated the same and by not providing her with supports or references for getting accepted to a new PA program after the Heritage program was dissolved.

127.    As a direct and proximate cause of Heritage's discrimination, Ms. Contreras has suffered damages in an amount to be proven at trial.

**XIV.  CAUSE OF ACTION – Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 701 et seq.**

128.    The foregoing allegations are incorporated by reference herein.

129.    Plaintiff Yadira Contreras is an individual with a disability. During the time Ms. Contreras was enrolled in Heritage, she was substantially limited in the major life activities of learning and concentrating. Accordingly, she is an individual with a disability as defined under Section 504, 29 U.S.C. § 705(9)(B).

130.    Heritage discriminated against Ms. Contreras solely based on her disability in violation of Section 504, 29 U.S.C. § 794(a), by *inter alia;* misleading

COMPLAINT FOR DAMAGES - 29

Ms. Contreras by asserting that she could return to Heritage in the 2021 school year; and by failing to provide Ms. Contreras with support and assistance in relocating to a new PA program after the Heritage PA program dissolved.

131.   Heritage acted with deliberate indifference in discriminating against Ms. Contreras based on her disability.

132.   At all relevant times herein, Heritage has been a recipient of federal financial assistance withing the meaning of 29 U.S.C. § 794(b)(2)(A), by virtue of its participation in federal programs and receipt of federal financial assistance including, but not limited to, the federal student loan program.

133.   As a direct and proximate cause of Heritage's discrimination, Ms. Contreras has suffered damages in an amount to be proven at trial.

## XV.   CAUSE OF ACTION – Americans with Disabilities Act, Title III 42 U.S.C. § 12181, et seq.

134.   The foregoing allegations are incorporated by reference herein.

135.   Plaintiff Yadira Contreras is an individual with a disability. Plaintiff's disability substantially limited the major life activities of learning and concentrating while she was enrolled at Heritage. Accordingly, Plaintiff Yadira Contreras is an individual with a disability under the Americans with Disabilities Act ("ADA"). See 42 U.S.C. § 12102.

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

136.    Heritage discriminated against Ms. Contreras solely based on her disability in violation of the ADA Title III by, *inter alia*: misleading Ms. Contreras by asserting that she could return to Heritage in the 2021 school year; and by failing to provide support and assistance in relocating to a new PA program after the Heritage PA program dissolved.

137.    At all relevant times, Heritage has been a place of public accommodation as defined under the ADA Title III, 42 U.S.C. § 12181(7)(J).

138.    As a direct and proximate cause of Heritage's discrimination, Ms. Contreras has suffered damages in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray this Court grant them relief, including but not limited to:

1.    Damages in an amount to be proven at trial;

2.    Attorneys' fees pursuant to RCW 49.60.030(2) *et seq.*, RCW 19.86.090, 29 USC 794a;

3.    Costs of suit as provided by RCW 49.60.030(2), *et seq.*

4.    Civil penalties under the state Consumer Protraction Act, RCW 19.86.140;

COMPLAINT FOR DAMAGES - 31

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101

5.     Injunctive relief prohibiting Heritage University from further tarnishing the professional and personal reputations of Plaintiffs and other students through harmful entries on student records or through professional gossip among faculty within the wider PA educational community.

6.     Prejudgment interest at the highest lawful rate; and

7.     Such other further relief as the Court may deem just and equitable.

Dated this 11th day of March, 2022.

CEDAR LAW PLLC

Lara Hruska, WSBA No. 46531
Attorney for Plaintiffs
Cedar Law PLLC
113 Cherry Street, PMB 96563
Seattle, WA, 98104-2205
Telephone: (206) 607-8277
Fax: (206) 237-9101
lara@cedarlawpllc.com

Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA  98104-2205
(206) 607-8277;
Fax (206) 237-9101