1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    EASTERN DISTRICT OF WASHINGTON

7    YADIRA CONTRERAS, ERICA
     KRONECK, KYLE OLSON, and          NO. 2:22-CV-3034-TOR
8    HENDRY ("CODY") RODMAN III,
                                        ORDER GRANTING DEFENDANT'S
9                        Plaintiffs,    MOTION FOR SUMMARY
                                        JUDGMENT
10          v.

11   HERITAGE UNIVERSITY,

12                       Defendant.

13         BEFORE THE COURT is Defendant's Motion for Summary Judgment

14   (ECF No. 19).  This matter was submitted for consideration without oral argument.

15   The Court has reviewed the record and files herein and is fully informed.  For the

16   reasons discussed below, Defendant's Motion for Summary Judgment (ECF No.

17   19) is GRANTED.

18
19
20

     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT ~ 1

**BACKGROUND**

This matter arises from the revocation of accreditation from Defendant Heritage University's Physician Assistant program. The following facts are not in dispute except where noted.

Plaintiffs Yadira Contreras, Erica Kroneck, Kyle Olson, and Hendry (Cody) Rodman III were enrolled in Defendant's Physician Assistant ("PA") program and began the program in the summer of 2020 as part of Cohort 6. ECF No. 19 at 9–10. Graduation from an accredited PA program is a prerequisite to taking the Physician Assistant National Certifying Examination ("PANCE"), which is required for licensure as a Physician Assistant. ECF No. 22 at 1–2, ¶¶ 3–5. The Accreditation Review Commission on Education for the Physician Assistant ("ARC-PA") oversees a program's accreditation. *Id*. at 2, ¶ 5.

In 2012, Defendant was initially granted provisional accreditation by ARC-PA, but the status was later changed to probationary. *Id*., ¶¶ 6–7. Probationary accreditation is conferred when a program does not meet the ARC-PA Standards, as described in the ARC-PA Accreditations Standards for Physician Assistant Education ("Standards"). *See* ECF No. 20-1. The ARC-PA Standards indicate the "sponsoring institution" is responsible for "teaching out currently matriculated students in accordance with the institution's regional accreditor or federal law in the event of program closure and/or loss of accreditation." ECF No. 22 at 4, ¶ 13.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

The Standards define "teaching out" as "[a]llowing students already in the program to complete their education or assisting them in enrolling in an ARC-PA accredited program in which they can continue their education." *Id.*

Defendant's program was under the probationary accreditation status at the time of Plaintiffs' enrollment. *Id.* at 5, ¶ 23. Plaintiffs were aware of the probationary status. *Id.* Defendant's website and Student Handbook contained statements regarding the accreditation status and specifically noted that ARC-PA conferred probationary status on programs that fail to meet accreditation requirements as specified by ARC-PA. *Id.* at 3, ¶ 11, at 6, ¶ 24. It further stated that if a program continued to fail to comply with the Standards, the program was at risk of having accreditation withdrawn. *See* ECF No. 20-6 at 7. The website and Handbook directed questions about the accreditation status to Defendant's administrators. *Id.*

Prior to beginning coursework, Plaintiffs signed the Student Handbook, acknowledging they read and understood the terms and conditions contained therein, including the accreditation status, and that they had the opportunity to ask questions and receive answers about the accreditation status. ECF No. 22 at 6, ¶¶ 26–27. Prior to signing the Student Handbook, Plaintiffs assert they were repeatedly reassured the probationary status would not affect their ability to graduate from an accredited program. ECF No. 42 at 6, ¶ 23. Thereafter, Plaintiffs

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

each began coursework, completing and receiving credit for the Summer 2020 semester.  ECF No. 22 at 7, ¶ 29.  Plaintiffs Olson, Kroneck, and Rodman also completed and received credits for the Fall 2020 and Spring 2021 semesters.  *Id.*, ¶ 30.

During the Summer 2020 semester, Plaintiff Contreras began experiencing mental health difficulties that impacted her education.  *Id.* at 8, ¶ 36.  Contreras received testing accommodations in August 2020.  *Id.* at 9, ¶ 37.  In September 2020, Contreras voluntarily withdrew from Cohort 6.  *Id.*, ¶ 43.  Contreras disputes the characterization as a "voluntary withdrawal" and asserts she "decelerated from the program with the understanding that she would return to Cohort 7 the following year."  ECF No. 42 at 10, ¶ 43.  Contreras does not explain how her characterization is materially different from Defendant's.  Consequently, Contreras did not complete the Fall 2020 semester as part of Cohort 6.  ECF No. 22 at 10, ¶ 45.  Although the deadline for tuition reimbursement had passed, Defendant returned $11,469 of Contreras's Fall 2020 tuition.  *Id.*, ¶ 46.

On October 23, 2020, ARC-PA notified Defendant it was withdrawing accreditation.  *Id.* at 7, ¶ 28.  Defendant responded that it would "teach out" all remaining students, including those in Cohort 6, as required by the ARC-PA Standards, but ARC-PA denied the attempt, stating Defendant would only be permitted to "teach out" those students scheduled to graduate in May 2021, and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

only if ARC-PA approved a teach out plan submitted by Defendant.  ECF Nos. 20-9; 20-10; 20-11.  As to any student expected to graduate beyond May 2021, including Plaintiffs, ARC-PA indicated it expected Defendant to "use its best efforts" to assist those students in transferring to other ARC-PA accredited programs.  ECF Nos. 20-11; 20-12 at 3.  ARC-PA further stated Defendant was required to "continue those efforts until all such students have transferred into another program."  ECF No. 20-12 at 3.

Plaintiffs dispute that Defendant's accreditation was withdrawn by ARC-PA and contend that Defendant withdrew its accreditation voluntarily.  ECF No. 42 at 8, ¶ 28.  Plaintiffs cite to a letter dated October 31, 2020 from Defendant to ARC-PA stating Defendant was "voluntarily withdrawing from the [ARC-PA] accreditation process."  ECF No. 20-9.  However, the letter was sent in response to the Notice of Adverse Action that Defendant received on October 23, 2020, notifying Defendant that its accreditation had been withdrawn by ARC-PA.  ECF No. 20-8 at 2.  The Notice outlines Defendant's possible next steps, including appeal or voluntary withdraw from the process.  *Id*. at 10.  Plaintiffs do not cite any evidence indicating Defendant had control over its accreditation status.

The parties do not dispute that Defendant did not appeal its accreditation revocation and did not further seek to enforce the teach out provision after its initial attempt was denied by ARC-PA.  ECF No. 45 at 4–5, ¶ 22.  However,

Defendant asserts there is no evidence of a factual basis upon which Defendant could have challenged the accreditation revocation.  *Id.*  Defendant claims it elected not to challenge the revocation in order to protect the accredited graduation of Cohort 5.  *Id.*  Plaintiffs do not cite any evidence suggesting Defendant would have succeeded on an appeal.  Although not explicitly stated by either party, it appears a voluntary withdrawal would permit Defendant to reapply for accreditation at a later date.  ECF Nos. 20-12 at 3; 29-6 at 5.  Failure to appeal or voluntarily withdrawal would have resulted in a final revocation of accreditation. ECF No. 20-8 at 10.

Following the loss of accreditation, Defendant claims it "took steps to mitigate harm" to Plaintiffs Olson, Kroneck, and Rodman by paying them various sums of money.  ECF No. 22 at 12, ¶¶ 57–59.  Plaintiffs assert they were not "paid" by Defendant but were reimbursed or refunded for portions of the costs they incurred after the loss of accreditation.  ECF No. 42 at 13–14, ¶¶ 57–59.  Plaintiffs do not explain how their characterization is materially different from Defendant's. Additionally, Defendant attempted to place Plaintiffs Olson, Kroneck, and Rodman in other ARC-PA accredited PA programs.  ECF No. 22 at 11, ¶ 55.  Defendant also attempted to place Contreras in another accredited PA program, despite her withdraw from Cohort 6.  *Id.*, ¶ 54.  Plaintiffs dispute this fact only to the extent that Kroneck and Contreras were not ultimately placed in another PA program by

Defendant, and Olson and Rodman "did significant legwork on their own to secure placements."  ECF No. 42 at 12, ¶ 55.

Plaintiffs filed a Complaint on March 14, 2022 that raises the following causes of action: violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86 *et seq*., breach of contract, breach of a covenant of good faith and fair dealing, fraudulent and negligent misrepresentation, unjust enrichment, promissory estoppel, negligence, and negligent hiring/supervision.  ECF No. 1 at 15–28, ¶¶ 55–121.  Plaintiff Contreras also alleges causes of action for violations of the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*.  Defendant moves for summary judgment on all claims asserted against it.  ECF No. 19.

## DISCUSSION

### I.    Legal Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## A. Washington Consumer Protection Act

Defendant moves for summary judgment, arguing there is no evidence that it engaged in an unfair or deceptive act or practice. ECF No. 19 at 17. Plaintiffs allege Defendant affirmatively misrepresented the effects of the accreditation probationary period and then misled Plaintiffs to believe Defendant would assist

1   with their transfers to different programs.  ECF No. 1 at 15–18, ¶¶ 59–68.

2        Washington's CPA prohibits "[u]nfair methods of competition and unfair or

3   deceptive acts or practices in the conduct of any trade or commerce."  RCW

4   19.86.020.  "Any person who is injured in his or her business or property by a

5   violation of RCW 19.86.020 . . . may bring a civil action" to recover actual

6   damages.  RCW 19.86.090.  "[A] claim under the Washington CPA may be

7   predicated upon a *per se* violation of statute, an act or practice that has the capacity

8   to deceive substantial portions of the public, or an unfair or deceptive act or

9   practice not regulated by statute but in violation of public interest."  *Klem v. Wash.*

10  *Mut. Bank*, 176 Wn.2d 771, 787 (2013).  To prevail on a non-*per se* CPA claim,

11  "the plaintiff must prove an (1) unfair or deceptive act or practice; (2) occurring in

12  trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her

13  business or property; [and] (5) causation."  *Id.* at 782 (quoting *Hangman Ridge*

14  *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986)).

15       As to the third prong, Washington courts distinguish between consumer

16  transactions and private disputes to determine whether the public has an interest in

17  a given action.  *Hangman Ridge*, 105 Wash. 2d at 790.  Generally, a breach of a

18  private contract that affects only the parties is not an act or practice affecting the

19  public interest.  *Id*. (citation omitted).  However, where there is a likelihood that

20  additional plaintiffs have been or will be injured in exactly the same fashion, a

1  private dispute may be one that affects the public interest.  *Id*. (citation omitted).

2  To determine whether a private dispute affects public interest, courts consider (1)

3  whether the alleged facts occurred in the course of the defendant's business, (2)

4  whether the defendant advertised to the public in general, (3) whether the

5  defendant solicited this particular plaintiff, indicating potential solicitation of

6  others, and (4) the relative bargaining position of the parties.  *Id*. at 791.

7        Here, the parties' dispute arguably involves a private agreement, as

8  evidenced by Plaintiffs' claims for breach of contract and breach of covenant of

9  good faith and fair dealing.  Accordingly, the Court will evaluate the

10  aforementioned factors to determine if their dispute has the potential to affect

11  public interest.  The allegedly deceptive acts were statements made by faculty and

12  administrators directly to Plaintiffs during their admissions interviews and after

13  Defendant lost its accreditation.  ECF Nos. 1 at 15, ¶ 60; 42 at 6, ¶ 23.  These

14  activities undisputedly occurred during the course of Defendant's business.

15  However, there is no evidence indicating these conversations occurred outside a

16  private setting or that they were publicly disclosed for advertising or solicitation

17  purposes.  "Isolated communications are not likely to deceive a substantial portion

18  of the public unless they are part of a standard form contract or a standard sales

19  representation." *Cassan Enterprises, Inc. v. Dollar Sys., Inc.*, 131 F.3d 145 (9th

20  Cir. 1997).  Moreover, Defendant's probationary accreditation status was clearly

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

1   disclosed on Defendant's publicly available website and explicitly stated in the

2   Student Handbook.  Plaintiffs acknowledge reading the probationary information.

3   ECF No. 22 at 6, ¶ 24.  There is also no evidence that any Plaintiff was solicited in

4   particular; rather, the Plaintiffs discovered Defendant's program through internet

5   searches and PA program resources.  *See*, *e.g.*, ECF Nos. 21-1 at 5; 21-2 at 9.

6       As to the relative bargaining power between the parties, neither party argues

7   Plaintiffs could have negotiated around any term in the Student Handbook.

8   However, by signing the Handbook prior to beginning the program, Plaintiffs

9   acknowledge they read and understood the terms.  ECF No. 22 at 6–7, ¶¶ 26–27.

10  Plaintiffs dispute Defendant's characterization of what they understood the

11  probationary status to mean.  ECF No. 42 at 7, ¶ 26.  Nonetheless, it is undisputed

12  that their signatures constituted acknowledgment that any questions they had

13  relating to the probationary accreditation status had been answered.  ECF No. 22 at

14  7, ¶ 27.  Moreover, Plaintiffs stated they researched what probationary

15  accreditation meant for universities and indicated they searched for and were aware

16  of other PA programs around the country.  *See, e.g.*, ECF Nos. 21-1 at 5; 21-2 at 3;

17  21-5 at 10.  There is no evidence Plaintiffs were coerced or pressured into

18  accepting the terms.  Plaintiffs could have chosen to attend other PA programs, but

19  they chose Defendant's.  It is undisputed that Plaintiffs accepted the terms of their

20  education, including the risks associated with the probationary status, such as a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

loss of accreditation.

Finally, Plaintiffs' allegations and supporting evidence relate to only some of the students in Cohort 6.  ECF No. 28 at 12.  Plaintiffs do not supply evidence that all of Cohort 6 experienced the same alleged harm or that prior cohorts experienced the same alleged harm or that future cohorts are substantially likely to face the same alleged harm.  Isolated incidents are insufficient to establish a real or substantial likelihood that others will experience the same harm.  *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 604–05 (2009) ("[T]here must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated.") (citation omitted).  Plaintiffs' claim that "other students will be injured unless [Defendant] is held accountable" is not supported by any evidence.  ECF No. 28 at 13.

Based on these factors, there is no evidence to suggest Plaintiffs' private dispute will affect public interest.  Plaintiffs' failure to establish the public interest element for their CPA claim is dispositive and the Court need not reach the remaining elements.  *Hangman Ridge*, 105 Wash. 2d at 793.  Defendants are entitled to summary judgment on this claim.[1]

---

[1]    Plaintiff Contreras advances a WLAD discrimination claim, which can provide the basis for a *per se* CPA violation, if successful.  ECF No. 1 at 28–29, ¶¶

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

**B. Breach of Contract**

Defendant moves for summary judgment on Plaintiffs' breach of contract claim on the grounds that the Student Handbook did not provide a guarantee that Defendant would remain accredited. ECF No. 19 at 19. Plaintiffs argue there are specific terms and statements in the Student Handbook and program brochure that contractually obligated Defendant to provide the requisite education for Plaintiffs to become certified physician assistants. ECF No. 28 at 15.

Generally, the relationship between students and universities is contractual in nature. *Marquez v. Univ. of Wash.*, 32 Wn. App. 302, 305 (1982). To succeed on a claim for breach of contract, a plaintiff must demonstrate the defendant owed a contractual duty, the defendant breached that duty, and that the breach proximately caused the plaintiff damage. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995). Since formal contracts rarely exist between students and universities, "the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications." *Marquez*, 32 Wash. App. at 305 (citation omitted). The student-university relationship is unique and "cannot be stuffed into one doctrinal

122–27; RCW 49.60.030(3). However, because the Court resolves the WLAD claim in Defendant's favor, Plaintiff Contreras's *per se* CPA claim also fails.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

category." *Ju v. The University of Washington*, 156 Wash. App. 1017 (2010) (citing *Marquez*, 32 Wash. App. at 306).  Accordingly, contract law provides a framework, but the applicable standard is that of reasonable expectations.  *Id.*

Here, both parties reference the 2020–2021 Student Handbook as the document providing essential terms to the parties' agreement.  ECF Nos. 19 at 19; 28 at 15.  The Student handbook explicitly stated that Defendant's program was initially afforded Provisional Accreditation status, which was a status granted to programs as they prepare for graduation of their first cohort but noted that Provisional Accreditation did not guarantee subsequent accreditation.  ECF No. 20-6 at 7.  The Handbook also indicated that as of September 2018, ARC-PA extended an Accreditation-Probation status for Defendant's program until the next review period in September 2020.  ECF No. 20-6 at 7.  The Handbook described Probation Accreditation status as:

> a temporary status of accreditation conferred when a program does not meet the Standards and when the capability of the program to provide an acceptable educational experience for its students is threatened. Once placed on probation, programs that still fail to comply with accreditation requirements in a timely manner . . . may be scheduled for a focused site visit and/or risk having their accreditation withdrawn.

*Id.*

Plaintiffs also cite to the program brochure, which contained the same language and an additional statement from the program director, which indicated

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

the probationary status was imposed due to Defendant's "lack of a robust self-study and analysis," not for its "education delivery."  ECF No. 29-5 at 36.  Plaintiffs also refer to assurances that were provided by Defendant's administrators regarding the effects of an accreditation revocation.  ECF No. 28 at 16.  Plaintiffs maintain they relied on these verbal and written statements when they signed the Student Handbook.  *Id*.

A review of the plain language in the Student Handbook makes it clear that accreditation was not guaranteed to Defendant.  Each Plaintiff acknowledged they read and understood the provision regarding the accreditation status by signing the Handbook.  ECF No. 22 at 6, ¶ 26.  Plaintiffs dispute Defendant's characterization of what they understood the probationary status to mean.  ECF No. 42 at 7, ¶ 26.  However, Plaintiffs do not provide evidence to overcome the undisputed fact that they accepted the terms and conditions in the Handbook.  There is also no evidence that any administrator indicated that Defendant would not be subject to review by ARC-PA.  At best, the administrators conveyed their own subjective beliefs that they had complied with the ARC-PA requirements.  Nonetheless, the fact remains that Defendant was on probationary accreditation status, subject to review, and Defendant's program failed the review, which resulted in a loss of accreditation.  Plaintiffs knew there was a risk that Defendant could lose accreditation and they accepted that risk.  It was unreasonable under the circumstances for Plaintiffs to

1  expect Defendant's accreditation was guaranteed.

2  To the extent Plaintiffs premise their breach of contract claim on

3  Defendant's alleged failure to place Plaintiffs in other accredited PA programs,

4  there is no evidence of a binding obligation between Defendant and Plaintiffs to

5  ensure Plaintiffs were placed in other programs.  As evidence, Plaintiffs cite to an

6  agreement between ARC-PA and Defendant (ECF No. 20-12 at 3) but

7  acknowledge they "had no privity with the ARC-PA."  ECF No. 28 at 17.  In any

8  event, the undisputed evidence demonstrates Defendant did attempt to place

9  Plaintiffs elsewhere.  *See* ECF Nos. 21-1 at 30–32; 21-2 at 17–18; 21-4 at 21–22;

10  21-5 at 17.  Any failure to ultimately place Plaintiffs Kroneck and Contreras in an

11  alternative program appears to relate to curriculum misalignments with other PA

12  programs.  *See* ECF No. 21-1 at 269; 21-4 at 22.

13  Viewing the evidence in a light most favorable to Plaintiffs, there is no

14  genuine dispute that Plaintiffs agreed to the terms of the Student Handbook, and

15  those terms included the risk of attending a program that could lose accreditation.

16  It is also undisputed that Defendant was not under a legal obligation to ensure

17  Plaintiffs' placements at alternative PA programs.  Therefore, Defendant is entitled

18  to summary judgment on Plaintiffs' breach of contract claim.

19  **C. Breach of Covenant of Good Faith and Fair Dealing**

20  Defendant argues Plaintiffs' claim for breach of covenant of good faith and

1  fair dealing fails for the same reason their breach of contract claim fails, namely

2  that Plaintiffs knew of Defendant's probationary status and the associated risks,

3  and they accepted those risks when they enrolled in Defendant's program.  ECF

4  No. 19 at 21.  Plaintiffs generically allege a breach of "express and implied

5  promises and representations" but do not point to a specific contract provision.

6  ECF No. 1 at 19–20, ¶¶ 73–79.

7      In Washington, a "covenant of good faith and fair dealing exists only in

8  relation to performance of a specific contract obligation."  *Gossen v. JPMorgan*

9  *Chase Bank*, 819 F. Supp. 2d 1162, 1170 (W.D. Wash. 2011).  Therefore, Plaintiffs

10  must identify the express contract term Defendant allegedly breached.  Plaintiffs'

11  allegations of generic promises are insufficient.  To the extent Plaintiffs attempt to

12  rely on the provision in the Student Handbook directing questions about

13  accreditation to administrators, it is undisputed that Plaintiffs asked questions and

14  received answers.  ECF No. 45 at 6, ¶ 27.  While Defendant's administrators may

15  have provided representations regarding the effects of Defendant's accreditation

16  loss, such representations were not part of the agreement Plaintiffs entered.

17      The Student Handbook contained an express term that Defendant's

18  accreditation was under probation and at risk of being revoked if the program

19  failed to comply with ARC-PA accreditation requirements.  ECF No. 20-6 at 7.

20  Plaintiffs do not deny they accepted this term when they signed the Student

1    Handbook.  ECF No. 42 at 7, ¶ 26.  Plaintiffs do not identify a specific contract

2    obligation that Defendant allegedly breached, as required by Washington law.

3    Therefore, Plaintiffs have failed to create a genuine issue of material fact and

4    Defendant is entitled to summary judgment.

5        **D. Fraudulent and Negligent Misrepresentation**

6        Defendant moves for summary judgment on the grounds that claims for

7    fraudulent and negligent misrepresentation cannot be predicated on promises of

8    future performance.  ECF No. 19 at 21–22.  Plaintiffs' claims allege Defendant

9    failed to provide complete information regarding the effects of the probationary

10   status of its PA program; failed to disclose its intent not to appeal the accreditation

11   revocation; and failed to relocate Plaintiffs Kroneck and Contreras.  ECF No. 1 at

12   20–22, ¶¶ 80–95.

13       Claims for fraudulent and negligent misrepresentation can be addressed

14   together when the basis for dismissal is premised on a shared requirement.  *Glacier*

15   *Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 198 Wash. 2d 768, 800

16   (2021), *cert. granted sub nom. Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc.*

17   *Union No. 174.*, 143 S. Ct. 82 (2022).  "A fraudulent misrepresentation claim and a

18   negligent misrepresentation claim both require the misrepresentation to be one of

19   existing fact; a promise of future performance is . . . not an actionable statement."

20   *Id*.  Here, Plaintiffs allege misrepresentations of promises of future performance,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

specifically that they would graduate from an accredited program or that Defendant would be able to "teach out" their Cohort in the event that Defendant lost accreditation.

To support their contentions, Plaintiffs cite to an internal email between Defendant's program faculty. ECF No. 29-5 at 39. The email was sent after Plaintiffs were enrolled in the program and after Defendant had lost accreditation. *Id*. The email indicated Defendant's administrators were awaiting final determination from ARC-PA regarding their ability to "teach out" Plaintiffs' cohort. *Id*. It is clear from the email that Defendant's faculty did not know they would be unable to "teach out" Cohort 6 prior to the loss of accreditation. Therefore, any assurance regarding the teach out provision during Plaintiffs' admissions process was a promise of future performance and cannot form the basis for Plaintiffs' claims.

Plaintiffs' claim regarding graduation is even more attenuated. The presently existing fact at the time of Plaintiffs' enrollment was that Defendant's accreditation was under probationary status and subject to revocation if Defendant did not meet the ARC-PA Standards. It is undisputed that Defendant expressly informed prospective students, including Plaintiffs, of this fact in the Student Handbook and on its website. ECF Nos. 20-6 at 7; 20-19 at 3. Any assurance regarding Plaintiffs' graduation was speculative and premised on a future

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1  performance, which also cannot form the basis of Plaintiffs' claims.

2      Plaintiffs do not present evidence of presently existing facts to support their

3  misrepresentation claims.  Even viewing the evidence in the light most favorable to

4  Plaintiffs, there are no genuine issues of material fact and Defendant is entitled to

5  summary judgment.

6      **E. Unjust Enrichment**

7      Defendant moves for summary judgment, arguing there can be no unjust

8  enrichment where Plaintiffs received tuition reimbursements or financial

9  compensation following the loss of Defendant's accreditation.  ECF No. 19 at 24–

10  25.  Plaintiffs allege they did not receive the educational benefit they paid for.

11  ECF No. 1 at 23–24, ¶¶ 96–100.

12      "Unjust enrichment is the method of recovery for the value of the benefit

13  retained absent any contractual relationship because notions of fairness and justice

14  require it."  *Young v. Young*, 164 Wash.2d 477, 484 (2008).

15      Three elements must be established in order to sustain a claim based
       on unjust enrichment: a benefit conferred upon the defendant by the

16      plaintiff; an appreciation or knowledge by the defendant of the benefit; and
       the acceptance or retention by the defendant of the benefit under such

17      circumstances as to make it inequitable for the defendant to retain the benefit
       without the payment of its value.

18

19  *Id.* (internal citations omitted).  A claim for unjust enrichment is based on the

20  doctrine of implied contract.  *MacDonald v. Hayner*, 43 Wash. App. 81, 85 (1986).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20

Under Washington law, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *U.S. for Use and Benefit of Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) (dismissing unjust enrichment claim where plaintiff had affirmed the validity of the contract).

Here, Plaintiffs have claimed breach of contract premised on the existence of a valid contract with Defendant. ECF No. 1 at 18, ¶ 71. Plaintiffs seem to acknowledge their unjust enrichment claim cannot stand in the presence of a valid and enforceable contract. *See* ECF No. 28 at 23. Because the Court resolved Plaintiffs' claim for fraudulent and negligent misrepresentation in Defendant's favor, the parties' contract is not voided. Therefore, Plaintiffs' unjust enrichment claim is precluded. Defendant is entitled to summary judgment on the claim.

## F. Promissory Estoppel

Defendant argues it is entitled to summary judgment because promissory estoppel cannot be premised on future promises and does not apply to express contracts. ECF No. 19 at 25–26. Plaintiffs allege they detrimentally relied on promises made by Defendant's administrators before and during the application process. ECF No. 1 at 24–26, ¶¶ 101–10.

This claim fails for the same reason Plaintiffs' claim for unjust enrichment

1    fails: a valid contract governs.  Like unjust enrichment, promissory estoppel is an

2    equitable doctrine that can provide relief in an action involving an implied contract

3    or quasi-contract.  *Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1116

4    (W.D. Wash. 2012).  Because Plaintiffs' breach of contract claim acknowledges

5    the existence of a valid agreement between the parties, and their negligent and

6    fraudulent misrepresentation claims did not void the parties' contract, Plaintiffs'

7    claim for promissory estoppel fails.  Defendant is entitled to summary judgment.

8    **G. Negligence**

9    Defendant moves for summary judgment because Washington courts do not

10    recognize a claim for negligent delivery of curriculum or failure to maintain a

11    specific academic experience.  ECF No. 19 at 26.  Plaintiffs allege Defendant

12    breached its duty under the teach-out clause described in the ARC-PA Standards to

13    either allow Plaintiffs to complete their education or to assist them with enrollment

14    in another accredited PA program.  ECF No. 1 at 26, ¶ 113.

15    Plaintiffs' claim amounts to what courts have described as educational

16    malpractice.  *See, e.g.*, *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir.

17    2019); *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992); *Gallagher v.*

18    *Capella Educ. Co.*, No. 21-35188, 2021 WL 6067015, at *1 n.1 (9th Cir. Dec. 20,

19    2021), *cert. denied,* 142 S. Ct. 2689 (2022), *reh'g denied,* 143 S. Ct. 47 (2022).

20    Neither the Ninth Circuit nor the Washington Supreme Court have addressed the

1  issue directly.  Other courts describe the doctrine as a "challenge to the sufficiency

2  or quality of education provided by educational institutions."  *Durbeck v. Suffolk*

3  *Univ.*, 547 F. Supp. 3d 133, 139 (D. Mass. 2021) (citation and internal quotations

4  omitted).  The overwhelming majority of states to consider this type of claim have

5  rejected it.  *See Ross*, 957 F.2d at 414 n.2.  There are several overarching policy

6  and practical concerns for rejecting these claims: the lack of standard of care by

7  which to evaluate educational institutions; the inherent uncertainties in the cause

8  and nature of damages in these types of cases; the potential flood of litigation

9  against schools; and the possibility of embroiling courts with the day-to-day

10  operations of schools.  *Ross*, 957 F.2d at 414.

11      However, not all claims are foreclosed by the educational malpractice

12  doctrine.  Where the "essence" of a claim is premised on a breach of contract, it

13  may be permitted.  *Durbeck*, 547 F. Supp. 3d at 139 (citation omitted).  A plaintiff

14  must allege the institution failed to perform the educational service entirely; the

15  claim cannot be premised on a failure to adequately perform the promised service.

16  *Id*.

17      As an initial matter, Plaintiffs' theory of liability seems to differ between the

18  Complaint and their responsive briefing.  Plaintiffs' pleadings sound in breach of

19  contract, alleging Defendants failed to provide a service that was promised, to wit,

20  assistance with enrolling in a different accredited PA program or the completion of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 23

1    Plaintiffs' education.  ECF No. 1 at 26–27, ¶¶ 111–16.  However, the responsive

2    briefing challenges the quality of Defendant's curriculum, specifically its duty "to

3    maintain accreditation," and its decision not to appeal the accreditation

4    determination.  ECF No. 28 at 26–27.  Looking to the evidence cited by Plaintiffs

5    to support their claim, and the fact that Plaintiffs allege a separate breach of

6    contract claim, the Court determines the essence of the negligence claim is

7    educational malpractice, not breach of contract.

8          To illustrate, Plaintiffs point to communications from Defendant's

9    administrators admitting "a lack of understanding with the accreditation process"

10   and indicating Defendant "should have pushed ARC-PA to allow us to teach out."

11   *Id*. at 27.  Plaintiffs are essentially asking the Court to assess the quality of

12   programming provided by Defendant and to determine whether Defendant's

13   decisions following accreditation loss were proper under the circumstances.  These

14   are precisely the types of determinations courts seek to avoid under the doctrine of

15   educational malpractice.  This Court will not wade into Defendant's decision-

16   making with regard to its PA program oversight.  As such, Plaintiffs' negligence

17   claim is precluded by the doctrine of educational malpractice and Defendant is

18   entitled to summary judgment.

19   **H. Negligent Hiring and Supervision**

20         Defendant moves for summary judgment on the grounds that Plaintiffs

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 24

1  cannot maintain a claim for negligent hiring or supervision where Defendant is

2  vicariously liable for its employees' actions.  ECF No. 19 at 28.  Plaintiffs allege

3  Defendant was deliberately indifferent to its duty to implement policies and

4  procedures to properly train its employees.  ECF No. 1 at 27–28, ¶¶ 117–21.

5      To establish a claim for negligent hiring, a plaintiff must prove the employer

6  knew of the employee's incompetence or failed to exercise reasonable care to

7  discover the incompetence before hiring the employee.  *Anderson v. Soap Lake*

8  *Sch. Dist.*, 191 Wash. 2d 343, 356 (2018).  Plaintiffs do not allege Defendant knew

9  or should have known any of its employees were incompetent or unfit, let alone

10  provide any evidence to support such claims.

11      With regard to negligent training, Plaintiffs' Complaint appears to confuse

12  the liability standard for a federal claim for failure to train.  *See Flores v. Cnty. of*

13  *Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (to succeed on a claim under 42

14  U.S.C. § 1983, the plaintiff was required to show a deliberate indifference to the

15  need to train employees).  Under Washington's negligent training standard,

16  Plaintiffs must demonstrate Defendant's employees acted outside the scope of their

17  employment when the tortious conduct occurred.  *Anderson*, 191 Wash. 2d at 361.

18  If the employees were acting within the scope of their employment, Defendant will

19  be vicariously liable instead.  *Id.*  Here, Plaintiffs do not allege, or provide any

20  evidence indicating, that Defendant's employees were acting outside the scope of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 25

their employment.

Plaintiffs have failed to present any evidence to create a genuine issue of fact with regard to their negligent hiring and supervision claim. Defendant is entitled to summary judgment.

## I. Disability Discrimination

Plaintiff Contreras raises three causes of action alleging disability discrimination under state and federal law. ECF No. 1 at 28–31, ¶¶ 122–38. Defendant moves for summary judgment on the grounds that Contreras was provided a testing accommodation for her disability, voluntarily withdrew from the PA program, and was provided assistance in finding placement at another program despite no longer being part of Cohort 6. ECF No. 22 at 9, ¶¶ 37–38, at 11, ¶ 53.

To prevail on a claim for disability discrimination under Title III of the ADA, a plaintiff must show "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); 42 U.S.C. § 12182(a)–(b). Similarly, to succeed on a claim under Section 504 of the Rehabilitation Act ("RA"), a plaintiff must demonstrate: (1) she is disabled within the meaning of the RA, (2) she is otherwise qualified for the benefits or services sought, (3) she was denied the benefits or services solely by

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

1  reason of her disability, and (4) the defendant receives federal financial assistance.

2  *Lovell v. Chandler*, 303 F.3d 1039, 1052–53 (9th Cir. 2002); 29 U.S.C. § 794(a).

3  The prima facie elements under the WLAD are substantially similar because

4  "RCW 49.60.215 is Washington's analogue to Title III."  *Weyer v. Twentieth*

5  *Century Fox Film Corp.*, 198 F.3d 1104, 1118 (9th Cir. 2000); *see also Fell v.*

6  *Spokane Transit Auth.*, 128 Wash. 2d 618, 637 (1996).

7        The parties dispute whether Contreras was discriminated against based on

8  her disability.  ECF Nos. 28 at 32; 44 at 9–10.  Contreras contends that after her

9  disability-related deceleration, she was not provided assistance to transfer to

10  another program, despite being reassured by Defendant's administrator that

11  Contreras would remain part of Cohort 6 and would receive the same assistance as

12  her classmates.  ECF No. 28 at 32.  Contreras further asserts she was promised a

13  letter of recommendation for her new PA program applications but never received

14  the letter.  *Id.* at 33.

15        To support her claims, Contreras provides an email correspondence between

16  herself and Defendant's administrators, as well as a Zoom call recording in which

17  one administrator told Contreras she was committed to ensuring all students were

18  placed in new programs, including Contreras.  ECF No. 30 at 4–5, ¶¶ 9–11.

19  Contreras's evidence does not support her allegations of discrimination.  The email

20  correspondence indicated Contreras would return as part of Cohort 7, the next

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 27

incoming class; there is no indication she would be considered a member of Cohort 6 after her deceleration.  ECF No. 30-1 at 15.  Plaintiffs' Statement of Disputed Facts acknowledges as much.  ECF No. 42 at 10, ¶ 44.  Contreras does not provide any other evidence from which the Court could infer Defendant excluded her from Cohort 6 because of her disability.

As to the administrator's statement that she was committed to placing members of Cohort 6, including Contreras, in a program, the administrator's subjective view of Contreras's placement is not evidence of disability discrimination.  The same is true of the letter of recommendation; there is no evidence that the letter was not provided because of Contreras's disability.  Finally, Contreras's attempt to characterize her withdraw as anything other than voluntary is also not evidence of disability discrimination.  *See id.* at 12, ¶ 54.  Contreras unilaterally withdrew from Cohort 6 prior to Defendant's loss of accreditation. The fact that she could not return with Cohort 7 because Defendant would not be admitting Cohort 7 does not establish disability discrimination.

Viewing the evidence in the light most favorable to Contreras, there is nothing in the record to suggest Defendant discriminated against her or that her disability was the animus for any alleged discrimination.  Defendant is entitled to summary judgment.

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 19) is

   **GRANTED**.

2. The deadlines, hearings and trial date are **VACATED**.

3. All pending motions are **DENIED** as moot.

The District Court Executive is directed to enter this Order and Judgment

accordingly, furnish copies to counsel, and **Close** the file.

DATED April 18, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 29